Approved: _____  **ORIGINAL**
RAHUL MUKHI
Assistant United States Attorney

Before:  THE HONORABLE FRANK MAAS   **12 MAG 3192**
United States Magistrate Judge
Southern District of New York

------------------------------------- x

UNITED STATES OF AMERICA,                  :   **SEALED COMPLAINT**
                                           :
                                           :   Violations of
            - v -                          :   21 U.S.C. §§ 812,
                                           :   841(b)(1)(C), 846,
BENJAMIN BOAMAH,                           :   952(a), 960(b)(3),
     a/k/a "Kweku,"                        :   and 963
     a/k/a "Osa,"                          :
DAVID FEMI ANIMASHAUN,                     :
     a/k/a "Femi,"                         :   COUNTY OF OFFENSE:
DERICK MAXWELL BOATENG,                    :   BRONX
     a/k/a "DMX,"                          :
LAWRENCE ABOAGYE OKAI,                     :
     a/k/a "Lawrence Nana Akesisem Aboagye,":
     a/k/a "Gboro,"                        :
                                           :
            Defendants.                    :
                                           :
------------------------------------- x



SOUTHERN DISTRICT OF NEW YORK, ss.:

    STEVEN C. NAUM, being duly sworn, deposes and says that he is a Special Agent with the Federal Bureau of Investigation ("FBI"), and charges as follows:

### COUNT ONE

    1.   From at least in or about April 2012, up to and including in or about May 2012, in the Southern District of New York and elsewhere, BENJAMIN BOAMAH, a/k/a "Kweku," a/k/a "Osa," DAVID FEMI ANIMASHAUN, a/k/a "Femi," DERICK MAXWELL BOATENG, a/k/a "DMX," LAWRENCE ABOAGYE OKAI, a/k/a "Lawrence Nana Akesisem Aboagye," a/k/a "Gboro," the defendants, and others known and unknown, intentionally and knowingly did combine, conspire, and confederate and agree together and with each other to violate the narcotics laws of the United States.

2. It was a part and an object of the conspiracy that BENJAMIN BOAMAH, a/k/a "Kweku," a/k/a "Osa," DAVID FEMI ANIMASHAUN, a/k/a "Femi," DERICK MAXWELL BOATENG, a/k/a "DMX," LAWRENCE ABOAGYE OKAI, a/k/a "Lawrence Nana Akesisem Aboagye," a/k/a "Gboro," the defendants, and others known and unknown, would and did import into the United States from a place outside thereof a controlled substance, in violation of 21 U.S.C. § 952(a).

3. The controlled substance involved in the offense was 100 grams and more of mixtures and substances containing a detectable amount of heroin, in violation of Title 21, United States Codes, Section 960(a)(1) and (b)(2)(A).

(Title 21, United States Code, Section 963.)

COUNT TWO

4. From at least in or about April 2012, up to and including in or about May 2012, in the Southern District of New York and elsewhere, BENJAMIN BOAMAH, a/k/a "Kweku," a/k/a "Osa," DAVID FEMI ANIMASHAUN, a/k/a "Femi," DERICK MAXWELL BOATENG, a/k/a "DMX," LAWRENCE ABOAGYE OKAI, a/k/a "Lawrence Nana Akesisem Aboagye," a/k/a "Gboro," the defendants, and others known and unknown, intentionally and knowingly did combine, conspire, confederate, and agree together and with each other to violate the narcotics laws of the United States.

5. It was a part and an object of the conspiracy that BENJAMIN BOAMAH, a/k/a "Kweku," a/k/a "Osa," DAVID FEMI ANIMASHAUN, a/k/a "Femi," DERICK MAXWELL BOATENG, a/k/a "DMX," LAWRENCE ABOAGYE OKAI, a/k/a "Lawrence Nana Akesisem Aboagye," a/k/a "Gboro," the defendants, and others known and unknown, would and did distribute and possess with intent to distribute a controlled substance in violation of 21 U.S.C. § 841(a)(1).

6. The controlled substance involved in the offense was 100 grams and more of mixtures and substances containing a detectable amount of heroin, in violation of 21 U.S.C. § 841(b)(1)(B).

(Title 21, United States Code, Section 846.)

The bases for deponent's knowledge and for the foregoing charge are, in part, as follows:

7. I am a Special Agent with the FBI and am one of the agents with primary responsibility for this investigation. This affidavit is based upon my own observations, my conversations with

other law enforcement agents and others, and my examination of reports and records. Because this affidavit is being submitted for the limited purpose of establishing probable cause, it does not include all the facts that I have learned during the course of my investigation. Where the contents of documents and the actions, statements and conversations of others are reported herein, they are reported in substance and in part, except where otherwise indicated.

8. On or about April 19, 2012, a drug courier who later become a cooperating witness ("CW-1")[1] arrived at Washington Dulles International Airport, Sterling, Virginia, on United Airlines Flight 991 from Accra, Ghana ("Flight 991"). Upon disembarking from Flight 991, CW-1 was stopped by U.S. Customs and Border Protection ("CBP") Inspectors. CW-1 was then taken to a medical facility where CW-1 passed a pellet from CW-1's intestinal tract, which tested positive for heroin. CW-1 expelled approximately 82 pellets from CW-1's intestinal tract. Based on my review of a laboratory report, the pellets expelled by CW-1 tested positive for heroin and weighed approximately 767.4 grams.

9. I and other law enforcement agents have debriefed CW-1, who stated in substance in part:

   a. CW-1 was in Ghana in or about April 2012. While in Ghana, CW-1 contacted BENJAMIN BOAMAH, a/k/a "Kweku," a/k/a "Osa," the defendant, to gain BOAMAH's assistance in finding heroin and financing the purchase of heroin. BOAMAH agreed to assist CW-1 and to provide $8,000 in U.S. currency toward the purchase of heroin.

   b. BOAMAH then contacted LAWRENCE ABOAGYE OKAI, a/k/a "Lawrence Nana Akesisem Aboagye," a/k/a "Gboro," the defendant, about obtaining heroin. OKAI brought BOAMAH and CW-1 to another co-conspirator not named as a defendant herein ("CC-1") in order to purchase heroin. CC-1 wanted $27,000 USD per kilogram of heroin. BOAMAH told CC-1 that BOAMAH would give CC-1 $10,000 USD up front as well as BOAMAH's passport and vehicle in exchange for the heroin. CC-1 declined BOAMAH's offer.

---

[1] CW-1 has agreed to plead guilty to narcotics offenses in the Eastern District of Virginia. CW-1 is cooperating with law enforcement in the hopes of obtaining a future sentence reduction. The information CW-1 has provided has been reliable and trustworthy, and has been corroborated by the FBI's investigation.

   c. BOAMAH, OKAI, and CW-1 then approached DAVID FEMI ANIMASHAUN, a/k/a "Femi," the defendant, about the heroin transaction. ANIMASHAUN said he was interested and knew a person who could provide the heroin.

   d. ANIMASHAUN then introduced CW-1 to DERICK MAXWELL BOATENG, a/k/a "DMX," the defendant. CW-1 and BOATENG traveled together to a particular neighborhood in Accra, Ghana, where BOATENG walked off on his own and purchased approximately one kilogram of heroin for $25,000 USD from a supplier who was not seen by CW-1. The $25,000 USD was provided by ANIMASHAUN.

   e. On or about April 19, 2012, ANIMASHAUN and BOATENG provided 82 pellets of heroin to CW-1. CW-1 ingested the 82 pellets and then flew from Accra, Ghana, to Washington D.C aboard Flight 991. ANIMASHAUN and BOATENG were present when CW-1 ingested the heroin and ANIMASHAUN and BOATENG drove with CW-1 to the airport in Accra, where CW-1 boarded Flight 991.

   f. Once in the United States, CW-1 intended to sell the heroin to one of CW-1's heroin customers.

  10. On or about April 24, 2012, CW-1 had a consensually recorded phone call with DAVID FEMI ANIMASHAUN, a/k/a "Femi," the defendant. Based on conversations between CW-1 and myself and other agents as well as my review of a summary translation of the call,[2] I learned that CW-1 and ANIMASHAUN discussed the following in substance and in part:

   a. DAVID FEMI ANIMASHAUN, a/k/a "Femi," the defendant, told CW-1 that everyone was worried about CW-1 because CW-1 had not been answering his phone. ANIMASHAUN told CW-1 that BENJAMIN BOAMAH, a/k/a "Kweku," a/k/a "Osa," was also worried. CW-1 told ANIMASHAUN there was no reason to worry.

   b. CW-1 told ANIMASHAUN that CW-1 had sold half of the heroin for $18,500 USD and that the other half of heroin remained.

  11. On or about April 25, 2012, CW-1 had a consensually recorded phone call with DERICK MAXWELL BOATENG, a/k/a "DMX," the defendant. Based on my review of a summary translation of

---

[2] The phone calls described herein took place in Ghanian language dialects. Both CW-1 and the FBI employee who reviewed the calls are fluent in those dialects.

the call, I learned that CW-1 and BOATENG discussed the following in substance and in part:

      a. DERICK MAXWELL BOATENG, a/k/a "DMX," the defendant, asked CW-1 why CW-1 had been so difficult to reach by phone. CW-1 told BOATENG that CW-1 does not carry his phone when he is in possession of "goods," i.e., narcotics, in order to avoid being tracked.

      b. CW-1 told BOATENG that CW-1 had sold half of the heroin for $18,500 USD. CW-1 asked BOATENG whether one of BOATENG's "clients" could purchase the remaining half of the heroin.

      c. BOATENG told CW-1 that so long as CW-1 lives in the United States and BOATENG and ANIMASHAUN were in Ghana, BOATENG and ANIMASHAUN could supply CW-1 with "goods," i.e., narcotics, to sell. BOATENG also told CW-1 that ANIMASHAUN was ready to do more business with CW-1.

    12. On or about April 25, 2012, CW-1 had a consensually recorded phone call with BENJAMIN BOAMAH, a/k/a "Kweku," a/k/a "Osa," the defendant. Based on my review of a summary translation of the call, I learned that CW-1 and BOAMAH discussed the following in substance and in part:

      a. CW-1 asked whether BENJAMIN BOAMAH, a/k/a "Kweku," a/k/a "Osa," the defendant, had talked to DAVID FEMI ANIMASHAUN, a/k/a "Femi," the defendant. BOAMAH said that ANIMASHAUN and LAWRENCE ABOAGYE OKAI, a/k/a "Lawrence Nana Akesisem Aboagye," a/k/a "Gboro," the defendant, had been bothering BOAMAH because they could not reach CW-1 by phone. BOAMAH said that ANIMASHAUN and OKAI made BOAMAH call CW-1 many times to try to reach him. BOAMAH said ANIMASHAUN and OKAI were bothering BOAMAH because BOAMAH had introduced them to CW-1.

      b. BOAMAH said he had been worried because another Ghanian boy was arrested when he driving carelessly and "goods" were found in his car.

      c. CW-1 told BOAMAH that CW-1 sold 41 of the 82 heroin pellets and that CW-1 had $18,500 USD. CW-1 told BOAMAH that ANIMASHAUN gave CW-1 a number of someone who could buy the remainder of the narcotics.

5

13. Based on my conversations with CW-1 and review of draft translations of consensually recorded conversations, I learned the following:

   a. On or about May 4, 2012, CW-1 received a text message and phone call from DAVID FEMI ANIMASHAUN, a/k/a "Femi," the defendant, who directed CW-1 to meet with another co-conspirator not named as a defendant herein ("CC-2"). ANIMASHAUN directed CW-1 to provide CC-2 with $10,000 of the proceeds that ANIMASHAUN believed CW-1 had received from selling the 41 pellets of heroin. ANIMASHAUN told CW-1 that CC-2 would transmit the money to ANIMASHAUN in Ghana.

   b. CW-1 then called CC-2, who directed CW-1 to meet CC-2 in the Bronx, New York.

   c. On or about May 4, 2012, CW-1 met with CC-2 in the Bronx. Under the supervision of the FBI, CW-1 provided CC-2 with $10,000 USD in cash.

14. On or about May 15, 2012, CW-1 had a consensually recorded phone call with DAVID FEMI ANIMASHAUN, a/k/a "Femi," the defendant. Based on my review of a summary translation of the call, I learned that CW-1 and ANIMASHAUN discussed the following in substance and in part:

   a. DAVID FEMI ANIMASHAUN, a/k/a "Femi," the defendant, told CW-1 that ANIMASHAUN was frustrated because CW-1 had not sent ANIMASHAUN all of the money. ANIMASHAUN said that as a result he had confiscated the passport and cars belonging BENJAMIN BOAMAH, a/k/a "Kweku," a/k/a "Osa," the defendant. ANIMASHAUN said he would not release the passport and cars until ANIMASHAUN received the additional money.

   b. ANIMASHAUN instructed CW-1 to collect the rest of the money and that he would tell CW-1 what to do next.

15. On or about May 21, 2012, CW-1 again met with CC-2 in the Bronx after receiving directions to do so from DAVID FEMI ANIMASHAUN, a/k/a "Femi," the defendant. Under the supervision of the FBI, CW-1 provided CC-2 with $29,200 USD in cash to transmit to ANIMASHAUN in Ghana.

16. On or about May 21, 2012, CW-1 had a consensually recorded phone call with BENJAMIN BOAMAH, a/k/a "Kweku," a/k/a "Osa," the defendant. Based on my review of a summary

6

translation of the call, I learned that CW-1 and BOAMAH discussed the following in substance and in part:

      a.    BENJAMIN BOAMAH, a/k/a "Kweku," a/k/a "Osa," the defendant, told CW-1 that DAVID FEMI ANIMASHAUN, a/k/a "Femi," the defendant, had told BOATENG that CW-1 had sent the money.

      b.    BOAMAH asked CW-1 how much money CW-1 had sent. CW-1 told BOAMAH that CW-1 sent $39,200 USD total. BOAMAH asked whether BOAMAH could now retrieve BOAMAH's passport from ANIMASHAUN and CW-1 told BOAMAH he could do so.

    17.    On or about May 23, 2012, CW-1 had a consensually recorded phone call to LAWRENCE ABOAGYE OKAI, a/k/a "Lawrence Nana Akesisem Aboagye," a/k/a "Gboro," the defendant. Based on my review of a summary translation of the call, I learned that CW-1 and OKAI discussed the following in substance and in part:

      a.    CW-1 asked whether LAWRENCE ABOAGYE OKAI, a/k/a "Lawrence Nana Akesisem Aboagye," a/k/a "Gboro," the defendant, had heard that CW-1 had sent the full payment to DAVID FEMI ANIMASHAUN, a/k/a "Femi," the defendant. OKAI responded yes.

      b.    CW-1 asked OKAI how much OKAI had received from ANIMASHAUN. OKAI said ANIMASHAUN had given $700 USD to OKAI and $1,000 USD to BENJAMIN BOAMAH, a/k/a "Kweku," a/k/a "Osa," the defendant.

    18.    In the presence of myself and other law enforcement agents, CW-1 identified official photographs of each of BENJAMIN BOAMAH, a/k/a "Kweku," a/k/a "Osa," DAVID FEMI ANIMASHAUN, a/k/a "Femi," DERICK MAXWELL BOATENG, a/k/a "DMX," the defendants, and a public photograph of LAWRENCE ABOAGYE OKAI, a/k/a "Lawrence Nana Akesisem Aboagye," a/k/a "Gboro," the defendant, as the individuals who conspired with CW-1 to obtain heroin in Ghana and to transport and distribute the heroin in the United States as set forth above.

WHEREFORE, deponent prays that warrants issue for the arrest of BENJAMIN BOAMAH, a/k/a "Kweku," a/k/a "Osa," DAVID FEMI ANIMASHAUN, a/k/a "Femi," DERICK MAXWELL BOATENG, a/k/a "DMX," LAWRENCE ABOAGYE OKAI, a/k/a "Lawrence Nana Akesisem Aboagye," a/k/a "Gboro," the defendants, and they be imprisoned or bailed as the case may be.

*[signature]*
STEVEN C. NAUM
Special Agent
Federal Bureau of Investigation

Sworn to before me this
10th day of December 2012

*[signature]*
THE HONORABLE FRANK MAAS
UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF NEW YORK

8